# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 3, 2010

## MARIO JOHNSON v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Shelby County
### Nos. P-26556, P-26615, P-26637     Carolyn Wade Blackett, Judge

---

### No. W2009-01023-CCA-R3-PC  - Filed October 5, 2010

---

Aggrieved of the Shelby County Criminal Court's denial of post-conviction relief from his convictions of first degree murder, especially aggravated robbery, and facilitation of first degree murder, the petitioner, Mario Johnson, appeals and claims that his convictions were infirm due to the ineffective assistance of trial counsel. We affirm, however, the order of the criminal court.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

James P. DeRossit, IV, Memphis, Tennessee, for the appellant, Mario Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tracye Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In Shelby County Criminal Court case number 98-09944, a jury convicted the petitioner of the September 19, 1997 first degree felony murder of Frankie Taylor. In his direct appeal from the conviction, the petitioner raised only the claim of insufficient evidence. This court affirmed the conviction after addressing the insufficiency claim as follows:

> In the present case, [Pedroza] Mays testified that he was present on the night in question. Mays stated that the [petitioner] jumped out of the vehicle, along with [Franklin]

Carter, and chased a young male. Mays further testified that he heard someone yell "lay down" and then heard a gunshot. Mays then watched as the [petitioner] returned to the car with a sawed-off shotgun in his hand. The [petitioner] admitted that his intention was to rob the victim and that he had fired the gun. Carter's girlfriend testified that she had overheard the [petitioner] planning to commit a robbery with Carter earlier that same day. Morever, inmate Jackson testified that he had previously overheard the [petitioner] admit that he had shot and killed a young male during a robbery when the young man fled. The testimony of Dr. [O.C.] Smith established that the victim died as a result of a gunshot wound to the back through the use of a shotgun. The medical examiner also testified that the marks on the body were consistent with someone who was standing or running at the time of the wound.

We find that the circumstantial evidence established at trial was such that a rational trier of fact could have drawn "no other reasonable inference save the guilt of the [petitioner] beyond a reasonable doubt." Accordingly, we conclude that the evidence presented at trial was sufficient to support the jury's verdict.

*State v. Mario Johnson*, No. W2001-00898-CCA-R3-CD, slip op. at 3-4 (Tenn. Crim. App. Jackson, Jan. 16, 2002).

In Shelby County Criminal Court case numbers 98-01761 and 98-01762, a jury in a second trial convicted the petitioner of the September 20, 1997 especially aggravated robbery and facilitation of the first degree murder of Oscar Barnes. In his direct appeal from those convictions, the petitioner raised only the claim of insufficient evidence. This court affirmed the convictions after addressing the insufficiency claim as follows:

In this instance, John Speer testified that he saw the [petitioner] flee from the residence of the victim immediately after several gunshots had been fired. Ms. [Bernadette] Carter testified that within two days of the shooting and robbery, the [petitioner] was in possession of a necklace, pendant, and Rolex watch similar to those owned by the [victim]. The victim's mother identified the items in the [petitioner's] possession as those which the victim possessed prior to his murder. Although

Ms. [Nikeesha] Cunningham may have qualified as an accomplice, her testimony that the [petitioner] and her former boyfriend, Franklin Carter, fled from the victim's residence immediately after several gunshots had been fired and that the [petitioner] was in possession of the victim's jewelry was sufficiently corroborated by other evidence in the trial. In our view, the evidence is sufficient to support convictions of facilitation to commit first degree murder and especially aggravated robbery.

*State v. Mario A. Johnson*, No. W2001-00372-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Jackson, Dec. 17, 2001).

In 2002, the petitioner filed timely pro se petitions for post-conviction relief. The post-conviction court appointed counsel to represent the petitioner and conducted a consolidated evidentiary hearing.

In the hearing, the petitioner testified that the same trial attorney represented him in both trials. He testified that Franklin Carter fired the shot that killed Mr. Taylor and that although the petitioner accompanied Mr. Carter, they had gone to the apartment complex with the intention of visiting some women and not to rob anyone. The petitioner testified that Mr. Carter carried a gun because they were not from the apartment complex in question and that "animosity and . . . beef" existed between people from different apartment complexes.

The petitioner testified that Mr. Carter "killed himself when the detectives came to look for him." The petitioner testified that although Mr. Carter was "like a radical" and had "a reputation or whatever that he had to . . . live by," the petitioner was surprised that Mr. Carter shot the victim, that the shooting "just happened out of nowhere." The petitioner opined that the shooting was prompted by the "beef" between the residents of the apartment complexes.

The petitioner testified that his trial counsel did not communicate with him "like he [was] supposed to on a monthly basis." He said counsel "mainly came to speak with [him] . . . two months before trial." He also claimed that trial counsel failed to subpoena Demetrius Lay, Pedroza Mays, and Nakisha Cunningham.[1] The petitioner testified that he did not testify in his own defense and that counsel called no other witnesses.

---

[1]We derive the spelling of Ms. Cunningham's given name from the evidentiary hearing transcript. Apparently, she is the same person referred to in *Mario Johnson* as Nikeesha Cunningham.

-3-

The petitioner claimed that Demetrius Lay was sitting in the car with the petitioner during both the shooting of Mr. Taylor and that of Mr. Barnes. He testified that Mr. Lay could have testified that the petitioner had no gun during the Taylor homicide and that he did not get out of the car during the Barnes homicide. The petitioner also opined that trial counsel failed to object to the testimony of, or to effectively cross-examine, Mr. Mays and Ms. Cunningham, who both testified for the State at trial. The petitioner referred to Mr. Mays as "an unindicted co-conspirator" who, he believed, made "some kind of under the table deal" with the prosecution. The petitioner testified that trial counsel failed to cross-examine Mr. Mays and Ms. Cunningham about the possibility of leniency or forbearance in exchange for testimony.

The petitioner testified that he did not know Mr. Barnes but that Mr. Carter and Ms. Cunningham knew him. He testified that Ms. Cunningham knew the victim through her activity as a prostitute. He testified that he accompanied Mr. Carter and Ms. Cunningham to the victim's residence to purchase some marijuana, and that when they arrived, only Mr. Carter and Ms. Cunningham went inside the residence. The petitioner testified that he and Mr. Lay remained in the car, that he later heard gunfire, and that Mr. Carter and Ms. Cunningham then ran from the residence. Mr. Carter admitted shooting the victim. The petitioner testified that he had anticipated neither a robbery nor a shooting.

The petitioner testified that trial counsel met with him "about five, six times" on the Taylor case and other times on the Barnes case. He agreed that counsel had gone over the evidence with him.

On cross-examination, the petitioner admitted that he knew that an investigator from trial counsel's office had interviewed Mr. Lay prior to the petitioner's trials. The petitioner testified that he tried to subpoena Mr. Lay to testify in the post-conviction hearing but that "for some strange reason, he's a no show." The petitioner admitted that Mr. Lay had previously said that he knew nothing about the shootings, but he maintained that Mr. Lay was prompted to claim his ignorance because he was scared.

Trial counsel testified that he represented the petitioner in both of the trials. He testified that he took advantage of the prosecution's open-file discovery opportunity and that he visited the petitioner in jail several times. He testified that the first "three or four times" he went to the jail to see the petitioner, the petitioner would not come down to see him because the petitioner was "upstairs playing basketball." Counsel said that the petitioner's case was investigated by his predecessor in the case, by himself, and by his office's investigator. He stated that several witnesses were interviewed. The interviews of Mr. Mays and Ms. Cunningham revealed that they would be prosecution witnesses, so the defense did not subpoena them. Counsel explained, "[W]e don't call witnesses to help the State." He

testified that they "were not exculpatory."

Counsel recalled that he cross-examined Ms. Cunningham extensively about her three different pretrial statements. Counsel testified that he always asks his clients for their input in jury selection and whether they wish additional questions to be put to any witnesses.

Trial counsel testified that his office's investigator interviewed Mr. Lay while he was in jail and that Mr. Lay told the investigator "in no uncertain terms that he was not going to testify. He didn't know anything about the case." As a result, the defense did not call him to testify.

The post-conviction court entered an order in which it expressed conclusions of law and findings of fact. It held that the petitioner failed to establish ineffective assistance of trial counsel and denied relief. The petitioner filed an untimely notice of appeal.

We utilize Tennessee Rule of Appellate Procedure 4(a) in this case to excuse the late filing of the petitioner's notice of appeal. That done, we address the petitioner's claims that his trial counsel was ineffective in failing to cross-examine prosecution witnesses about agreements for leniency or forbearance, in failing to subpoena Mr. Lay to testify in the trials, and in failing to adequately communicate with the petitioner.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that his counsel's advice or services were not "within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697;

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In the present case, the post-conviction court ruled that the petitioner failed to establish any of his claims of ineffective assistance of counsel, and based upon the record, we must agree. He did not establish that counsel performed deficiently in any of the claims preserved on appeal.

Accordingly, we affirm the order of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE